**Affirmed and Memorandum Opinion filed March 7, 2013.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-12-00349-CV**

---

**RIESON GABRIEL, Appellant**

**V.**

**ASSOCIATED CREDIT UNION OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10-CV-4171**

---

## M E M O R A N D U M   O P I N I O N

The appellee, Associated Credit Union of Texas ("the lender"), made a vehicle loan to the appellant, Rieson Gabriel. Over the course of the loan, the lender mistakenly assessed $234.02 in late fees, none of which Gabriel paid, and all of which the lender reversed. After Gabriel later defaulted, the lender repossessed the vehicle; Gabriel then sued the lender for $850,000. On appeal, Gabriel contends that the trial court erred by considering an inadmissible summary

judgment affidavit and by granting summary judgment against his claims. Because the trial court did not abuse its discretion by considering the affidavit and because Gabriel failed to present evidence of damages or of wrongful repossession, we affirm.

## BACKGROUND

In April 2004, Gabriel borrowed approximately $11,500 from the lender to purchase a used Mercedes. Shortly thereafter, a clerical error altered the loan's monthly due date. As a result, the lender assessed late fees on several timely payments. The lender corrected its mistake in June 2009 and reversed all mistakenly assessed fees in November 2009.

In July 2009, although he still owed $8,371.58, Gabriel stopped paying the loan. He continued receiving monthly statements and received at least two notices of delinquency before the lender repossessed the vehicle in January 2010. The lender sold the vehicle at public auction. It applied the proceeds against the loan balance, but they were insufficient to satisfy the entire debt. The outstanding balance was referred to a collection agency. Both this referral and the repossession appear on Gabriel's credit report.

Gabriel then filed this suit against the lender, alleging "Intentional Misrepresentation, Negligence, Repossession and Damage of Plaintiff's Credit." He sought $850,000 in damages. The lender moved for summary judgment. In support of its motion the lender submitted, among other things, an affidavit from its general counsel, David DeAnda. The trial court granted the lender's summary judgment motion, and Gabriel appealed.[1]

---

[1] In part 2 of his reply brief, Gabriel argues that the trial court abused its discretion by granting summary judgment without considering his responses to the summary judgment motion. The trial court's order granting summary judgment stated that it had "considered the [summary judgment] Motion and exhibits thereto, the pleadings and documents on file with the Court, and

2

In multiple issues,[2] Gabriel contends the trial court erred by granting summary judgment to the lender. Before turning to Gabriel's substantive arguments, we analyze his issue, addressed in parts A.1. and B.b. of his brief, that David DeAnda's affidavit was "a sham and direct contradiction, inconsisten[t], . . . inadmissible," and therefore improper summary judgment evidence.

## I. The trial court did not abuse its discretion by considering DeAnda's affidavit.

Gabriel's complaints about the affidavit appear to be twofold. First, he argues the affidavit is not based upon personal knowledge.[3] Next, he claims that, because DeAnda is an interested witness and the affidavit is inconsistent and not readily controvertible, reliance upon the affidavit violated Texas Rule of Civil Procedure 166a(c). We review a trial court's decision to exclude or admit summary judgment evidence for an abuse of discretion. *Pipkin v. Kroger Texas,*

---

any opposition thereto." We construe the order to mean that the court considered Gabriel's three filings in opposition to the motion, all of which he submitted at least three weeks prior to the order.

[2] Gabriel did not adequately brief his fourth and fifth issues presented for review, and we therefore need not consider them. *See* Tex. R. App. P. 38.1(i). Even if we did, however, neither issue affects the lender's entitlement to summary judgment. As to the fourth issue, Gabriel presented no evidence that the lender procured his agreement to the loan by fraud. As to the fifth, we reject Gabriel's apparent contention that the lender's breach constituted a failure of consideration invalidating the entire contract.

[3] The parties dispute whether DeAnda's alleged lack of personal knowledge goes to the form or the substance of his affidavit. Defects in the form of affidavits are not grounds for reversal unless raised in the trial court, but a party may raise substantive objections for the first time on appeal. Tex. R. Civ. P. 166a(f); *see also Progressive Cnty. Mut. Ins. Co. v. Carway*, 951 S.W.2d 108, 117 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Because we hold that DeAnda's affidavit is based on personal knowledge, we need not decide whether the defects Gabriel alleges are formal or substantive. *See Pipkin v. Kroger Texas, L.P.*, 383 S.W.3d 655, 669 n.13 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

*L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). When a trial court rules on an evidentiary objection without making findings of fact, we view all facts necessary to support the trial court's evidentiary ruling as impliedly found. *See Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Of course, such implied findings are subject to challenge if they lack support in the record. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 566 (Tex. 1995).

### A. The record supports an implied finding that DeAnda's affidavit satisfied the personal knowledge requirement.

Affidavits supporting and opposing summary judgment must "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f); *see Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552–54 (Tex. App.—Houston [14th Dist.] 2010, no pet.). If an affidavit does not positively show a basis for the affiant's knowledge, the mere recitation that it is based on personal knowledge is inadequate. *Valenzuela*, 317 S.W.3d at 553. When an affiant recites that he has knowledge and "shows *how* he gained personal knowledge," however, the affidavit satisfies the personal knowledge requirement. *Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, no writ).

For example, in *Waite*, a foreclosure case, a bank vice-president's affidavit satisfied the personal knowledge requirement even though he was not employed by the bank when the foreclosure occurred. *Id.* The affidavit's opponent argued that the vice-president lacked personal knowledge because he based his affidavit on "written records and conversations with employees." *Id.* The court held that, because the affidavit demonstrated the vice-president's responsibility for loans like the one at issue, it was based on personal knowledge. *Id.* In this way, although the

vice-president was not employed by the bank during the foreclosure, his job responsibilities nonetheless demonstrated his knowledge of the foreclosure suit. *Id.* at 540.

Here, DeAnda's affidavit stated:

> My name is David DeAnda. I am over twenty-one years of age, of sound mind and fully competent to make this affidavit. I have personal knowledge of all facts stated herein, and all of those facts are true and correct.

> . . . I am the general counsel of [the lender], and have served in that capacity since June 1, 2009. I discussed Ries[o]n Gabriel's loan with him prior to the repossession of his vehicle. I have personally reviewed the loan documents, file and records of communications with Mr. Gabriel.

The affidavit also stated that DeAnda personally arranged to remove the mistakenly assessed late fees from Gabriel's account and detailed DeAnda's discussions with Gabriel.

Review of the loan materials and personal interactions with Gabriel demonstrate knowledge of the circumstances surrounding Gabriel's loan. Although some of the facts recited in the affidavit occurred before DeAnda became general counsel, as in *Waite*, his position and his work on the loan demonstrate how DeAnda learned these facts. As a result, the affidavit satisfied the personal knowledge requirement.

**B. Gabriel does not point to a specific inconsistency in the affidavit, and the trial court's implied finding that the affidavit is readily controvertible was not an abuse of discretion.**

Next, Gabriel claims that the affidavit is inconsistent and not readily controvertible. When summary judgment is based upon the affidavit of an interested witness, the affidavit must be, among other things, "free from . . . inconsistencies" and capable of being "readily controverted." Tex. R.

5

Civ. P. 166a(c). We reject Gabriel's conclusory allegation that the affidavit is inconsistent because he has failed to direct us to a specific inconsistency, and we have found none. As to his contention that the affidavit is not readily controvertible, we disagree.

Although DeAnda's affidavit addresses some events pre-dating his employment, it is nonetheless readily controvertible. "'Could have been readily controverted' does not mean that the summary judgment evidence could have been easily and conveniently rebutted, but rather indicates that the testimony could have been effectively countered by opposing evidence." *Trico Techns. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). Here, Gabriel could effectively counter allegations of events prior to DeAnda's employment by testifying himself or questioning employees who worked on the loan before DeAnda became general counsel. *See id.* Nothing in the record suggests Gabriel sought such controverting evidence or that it was unavailable.

We also reject Gabriel's argument that *CEBI Metal Sanayi Ve Ticaret A.S. v. Garcia*, 108 S.W.3d 464, 465 (Tex. App.—Houston [14th Dist.] 2003, no pet.), requires us to conclude that DeAnda's affidavit is not readily controvertible. In *CEBI Metal*, the construction supervisor responsible for unloading a steel beam submitted an affidavit about an accident that he did not witness. *See id.* We noted that the supervisor's responsibility for safety meant that his credibility was likely to be a dispositive factor in resolving the case. *Id.* In addition, because the supervisor did not witness the accident himself and had discarded a key piece of evidence, we held that his testimony could not be readily controverted. *Id.*

Here, unlike in *CEBI Metal*, DeAnda's credibility will not be a dispositive factor. The lender based its summary judgment motion upon the absence of damages and its right to repossess the vehicle. Entitlement to summary judgment

6

thus arises from Gabriel's payment history, the terms of the loan agreement, and the application of repossession law—none of which implicates DeAnda's credibility. Moreover, as discussed above, the record does not show that Gabriel was unable to controvert DeAnda's testimony. We therefore conclude that the trial court did not abuse its discretion by considering DeAnda's affidavit and overrule Gabriel's first issue.

## II. The trial court properly granted summary judgment against Gabriel's claims.

The lender moved for both traditional summary judgment under Rule 166a(c) and no-evidence summary judgment under Rule 166a(i). We first review the trial court's summary judgment under the standards of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under that rule, Gabriel (as the non-movant) must produce summary judgment evidence raising a genuine issue of material fact. *Id*.; *see also* Tex. R. Civ. P. 166a(i). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex. 2000). If Gabriel failed to produce more than a scintilla of evidence, then we need not analyze whether the lender satisfied its burden to obtain a traditional summary judgment under Rule 166a(c). *Ford Motor Co.*, 135 S.W.3d at 600.

Gabriel's pleading alleged several causes of action, but he based each claim upon two acts by the lender.[4] Most of Gabriel's causes of action—breach of

---

[4] In parts A.5., B.f., B.g., and B.h. of his brief, Gabriel complains about charges that the lender assessed for insuring the vehicle after Gabriel's insurance lapsed. In the trial court, Gabriel made no claim based upon these charges. Indeed, in a deposition, Gabriel refused to answer questions about the insurance charges because he was "not making any claim based on any of the insurance issues." In its appellee's brief, the lender argues that Gabriel cannot rely upon the charges to defeat summary judgment because he failed to allege them in his petition and insisted the charges were not a basis for his suit. The lender also made this argument in the trial court, but Gabriel never amended his pleadings or otherwise refuted his deposition testimony. Although we liberally construe pro se pleadings, it would be unfair to give Gabriel the benefit of

contract, intentional misrepresentation, "Damage of Plaintiff's Credit," and negligence—arose from the lender mistakenly changing the due date for Gabriel's monthly loan payment. The other—wrongful repossession—arose from the lender repossessing the vehicle.[5]

When moving for summary judgment, the lender pointed to specific defects in both sets of claims.[6] For the claims relying upon the mistaken due date change, the lender argued that Gabriel suffered no damages because he never paid the wrongly assessed late fees. For the other claim, the lender argued that it had the right to repossess the vehicle because Gabriel defaulted on the loan. We agree with the lender.

### A. The trial court properly granted no-evidence summary judgment against Gabriel's claims concerning the due date change because Gabriel did not offer any evidence of damages.

All of Gabriel's claims arising out of the due date change require evidence of damages.[7] *See Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 907 n.2

---

a construction he has specifically disavowed. *See Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999). We therefore do not consider Gabriel's summary judgment arguments that rely upon the insurance charges.

[5]In parts A.6. and B.e. of his brief, Gabriel argues that the lender's motion for summary judgment failed to address his claim of "negligence misrepresentation." To the extent Gabriel's argument refers to a negli*gent* misrepresentation claim, Gabriel first raised this claim in his response to the lender's summary judgment motion, and the lender then addressed it on pages eight through eleven of its reply to Gabriel's response.

In his sixth issue, Gabriel contends that the lender failed to address both his negligence claim and his misrepresentation claim. The lender's summary judgment motion addressed both claims on page eleven, arguing they duplicated Gabriel's breach of contract claim and failed for want of damages. We therefore overrule Gabriel's sixth issue.

[6] In Gabriel's second and third issues, addressed in part A.2. of his brief, he argues the lender's summary judgment motion failed to "specifically name the elements [of his claims] challenged." We have reviewed the lender's motion, and it specifies the challenged elements. We therefore overrule Gabriel's second issue.

[7] In parts A.3. and B.a. of his appellant's brief, Gabriel argues that his misunderstanding of the loan terms was an improper basis for granting summary judgment. Because we do not rely

8

(Tex. App.—Houston [14th Dist.] 2012, no pet.) (breach of contract claim requires damages); *RenCare, Ltd. v. United Med. Res., Inc.*, 180 S.W.3d 160, 166 (Tex. App.—San Antonio 2005, no pet.) (intentional misrepresentation claim requires injury); *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998) (negligence claim requires damages). In parts A.4 and B.h. of his brief, Gabriel argues that his damages include economic loss, repossession, mental anguish, and two inaccurate delinquency reports.[8] We conclude that Gabriel's arguments do not provide any evidence of damages.

### 1. Gabriel failed to produce a scintilla of damage evidence in the form of economic loss, damage to his credit, or wrongful repossession.

Gabriel did not suffer economic loss because he offered no evidence that he paid late fees as a result of the lender's mistake, and the record conclusively establishes that he did not. Similarly, Gabriel's claim that the due date change led to repossession of the vehicle and inaccurate delinquency reports fails because the summary judgment evidence established as a matter of law that the change caused neither. Rather, the repossession and reports resulted from Gabriel's refusal to pay

---

upon Gabriel's apparent misunderstanding to affirm the grant of summary judgment, we need not address these arguments. *See Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("When, as here, the trial court's order granting summary judgment does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious.").

[8] Gabriel appears to argue that damage to his credit from these reports is both an independent cause of action and an element of damages. Although damage for "loss of credit" is recoverable in a breach of contract action, *see Mead v. Johnson Grp. Inc.*, 615 S.W.3d 685, 688 (Tex. 1981), we know of no authority, and Gabriel has cited none, recognizing "damage to credit" as an independent tort in Texas. *See Bosch v. Provident Am. Life & Health Ins. Co.*, 14-06-00694-CV, 2007 WL 3105265, at *3 (Tex. App.—Houston [14th Dist.] Oct. 25, 2007, pet. denied) (mem. op.) (where party "fail[ed] to cite any law providing for a separate [damage-to-credit] cause of action" and offered no evidence supporting a claim for which damage to credit was recoverable, trial court properly granted summary judgment against damage-to-credit claim). Therefore, we analyze Gabriel's damage-to-credit claim as an element of damages for his other claims.

the loan even after the lender corrected its error.

Gabriel made his last loan payment in July 2009, and the lender reversed the mistakenly assessed late fees in November 2009. Gabriel's credit report reflects two entries related to this case, both of which post-date the lender's correction of the due date error. One entry shows that the lender repossessed the vehicle and that the account closed in February 2010; the other shows that in July 2010 the account's outstanding balance was placed "for collection."

Neither entry references the late fees, which were reversed months before the events in the report. Moreover, DeAnda's affidavit stated that the lender never reported the late fees to a credit agency, that Gabriel never paid them, and that the fees were not the basis of Gabriel's default. These statements are consistent with Gabriel's loan statements and with the portion of Gabriel's credit report submitted as summary judgment evidence.

Because the lender reversed the late fees months before repossessing the car and making the credit reports, Gabriel failed to produce a scintilla of evidence that the fees damaged his credit or resulted in wrongful repossession of the vehicle.

### 2. Gabriel failed to produce a scintilla of evidence supporting his claims of mental anguish damages.

As for Gabriel's allegation of mental anguish, to the extent Gabriel's claims sound in tort, "mental anguish damages are not recoverable in any tort action based on rights growing out of the breach of a contract." *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 486 (Tex. App.—Houston [14th Dist.] 1996, no writ). Here, the parties' contract created a duty for the lender to assess late fees in a particular manner. Gabriel's tort claims for altering the due date stem from the lender's breach of this contractual obligation. Because the right at issue arises from contract, Gabriel cannot recover mental anguish damages in a tort action. *See id.*

10

To the extent Gabriel claims mental anguish damages based on the lender's breach of contract, he offered no summary judgment evidence supporting such damages. Mental anguish damages in a contract action require, among other things, that the mental anguish be "more than ordinary regret or annoyance . . . and . . . such a necessary and natural result of the breach of contract as to have been within the contemplation of the defendant at the time the contract was made." *Id*. at 485; *see also City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997) ("Mental anguish is . . . compensable as the foreseeable result of a breach of . . . a very limited number of contracts dealing with intensely emotional noncommercial subjects . . . ."). Gabriel cites no summary judgment evidence, and we have found none, raising a question of fact as to whether his level of distress reached that of mental anguish or was within the lender's contemplation when the parties made their contract.

Because Gabriel introduced no evidence of damages stemming from the mistakenly assessed late fees, the trial court properly granted no-evidence summary judgment against his late fee claims.[9]

### B. The trial court properly granted traditional summary judgment against Gabriel's claims arising out of the vehicle's repossession.

Turning to Gabriel's wrongful repossession claim, the lender's summary judgment evidence conclusively established its right to repossess the vehicle. After default, a secured party may take possession of the collateral without judicial process if it proceeds without breaching the peace. Tex. Bus. & Com. Code Ann. § 9.609 (West 2011). Here, the parties' agreement made the vehicle security for the loan. At the time of the repossession, Gabriel had not made a payment for five

---

[9] Because Gabriel's failure to produce evidence of damages requires summary judgment, we do not address the contention in part A.4 of his brief that the lender's change of due date breached the loan agreement.

11

months, owed over $8,000 on the loan, and was therefore in default. There is no contention that the repossession breached the peace or violated any statute.[10] Therefore, the trial court properly granted summary judgment against Gabriel's wrongful repossession claim.

## CONCLUSION

For these reasons, we conclude that the trial court properly granted the lender's summary judgment motion as to each of Gabriel's claims. We therefore affirm the trial court's judgment.

/s/ J. Brett Busby
   Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

---

[10] In part B.d. of his brief, Gabriel appears to argue that the burden was upon the lender to establish its right to repossess the vehicle as an affirmative defense. Even assuming, without deciding, that Gabriel is correct, the lender's summary judgment evidence met this burden, and the trial court properly granted traditional summary judgment against the wrongful repossession claim. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) (summary judgment available when evidence conclusively establishes affirmative defense).